# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| vs. : | |
| : | NO. 1:08-CR-330-TCB |
| ROGER HAMMOND : | |

## GOVERNMENT'S SENTENCING MEMORANDUM REGARDING DEFENDANT ROGER HAMMOND

The United States hereby files this Sentencing Memorandum in advance of Roger Hammond's Sentencing Hearing, which is currently scheduled for July 14, 2009. The Presentence Investigation Report has determined the defendant is a career offender under the Sentencing Guidelines and, accordingly, his Guideline range is fixed at 262 to 327 months in prison. For the reason stated herein, the Government recommends the defendant be sentenced at the high end of the applicable Guideline range.

### BACKGROUND

The defendant's first drug conviction occurred when he was 18 years old in Fulton County. (PSI at ¶ 28.) On January 22, 2001, he pled guilty to possessing cocaine and was sentenced to three years confinement, which was suspended, even thought he had been originally charged with a violation of the Georgia Controlled Substances Act. (Id.) Two years later, however, the defendant was back in Fulton

County Superior Court. This time charged with the sale of heroin. (PSI at ¶ 32.) He pled guilty and was then sentenced under Georgia's First Offender Act. (Id.) At the time, the defendant was also charged with Trafficking in Heroin, Possession with Intent to Distribute Heroin and Possession of a Firearm During the Commission of a Crime. (Id.) These charges were later dead docketed by the State. (Id.) By February 2003, however, the defendant was re-arrested after he violated his conditions of parole. (Id.)

At the age of 24, the defendant returned to state court again to face his fourth set of drug charges. (see PSI at ¶¶ 35 and 36.) In a process that had now become routine, he pled guilty - this time to trafficking in heroin and possession of a firearm by a convicted felon. (Id.) He was sentenced to five years in jail and released on parole in August, 2006. (Id.)

By March 9, 2007, however, the defendant was back in state court, having been charged in Dekalb County with distributing cocaine. (PSI at ¶ 37.) In May, 2007, the defendant pled guilty to a violation of the Georgia Controlled Substances Act and was sentenced to six months in prison, even though it was his eleventh conviction and his fifth drug conviction. (Id.)

The drug convictions described above, however, do not fully incorporate the extent of the defendant's criminal conduct over this ten-year period. In the time the

defendant was not incarcerated, he was also arrested by police for gambling, driving with a suspended license (3 times), simple battery (2 times), possession of marijuana, theft by receiving stolen property, acquiring a license plate for purposes of concealing identification, violations of the Georgia Controlled Substances Act (2 times) and possession of cocaine. (PSI at ¶¶ 29, 30, 31, 33, 34, 45-50.) The defendant was ultimately convicted of illegal gambling, driving on a suspended license (3 times), and possession of marijuana in addition to the drug crimes detailed above. It was clear the defendant could not color between the lines.

Yet, despite his criminal history and the fact he was on parole at the time, the defendant was back to dealing heroin by March 26, 2008, ten months after he entered a plea in his Dekalb County drug case. On this date in March and two other subsequent dates in 2008, the defendant sold heroin to a confidential informant working at the direction of the ATF. (PSI at ¶¶ 8-13.) On March 26, May 13, and June 11, he sold 20.1 grams, 29.4 grams and 48.9 grams of heroin to the informant. (PSI at ¶ 9). A fourth deal was arranged on July 29, 2008. (PSI at ¶ 10.) On that date, the defendant agreed to sell the confidential informant 80 grams of heroin for $10,000. (Id.) Before he could complete the sale, however, the defendant was arrested by troopers with the Georgia State Patrol. Inside his car, the troopers located an additional 34.5 grams of heroin, which included packaging, and $9,952. (Id.)

Inside a nearby hotel room rented by the defendant, agents located $17,025 in drug proceeds. (PSI at ¶ 5.) From this evidence, it was apparent the confidential informant was not his only customer.

In a written confession, the defendant admitted that he distributed heroin on a daily basis until his arrest and that he distributed at least 100 grams of heroin in the last year. (Exhibit A to this motion.) He added that he purchased the heroin that was seized for $2,800 and planned to sell it to another individual named "Mook." (Id.)

At the time of his arrest, the defendant also told agents that he had made more than 100 purchases of heroin and that his most recent source of supply had the best heroin in the state of Georgia . (PSI at ¶ 13). The defendant added that the source on average would "front" him 50 to 80 grams of heroin two to three times a month. (Id.) In his own words, the heroin was "pure, uncut and A-1 grade." (Id.) When he was asked whether he had heard of anyone dying from the use of the heroin, the defendant told the agents that a user named "Dave" turned blue after taking heroin obtained from him and that another person had to "bring Dave back." (Id.)

Realizing that there may be deaths associated with the defendant's distribution of drugs, agents with the Bureau of Alcohol, Tobacco and Firearms ("ATF") investigated further. The ATF's investigation eventually suggested that at least two individuals may have died after consuming heroin distributed by the defendant.

Autopsy results note that the individuals had alcohol and other drugs in their system and, consequently, the coroner could not conclude definitively that the heroin the defendant distributed caused their deaths. (PSI at ¶ 14).[1] Yet, both individuals had heroin in their system when they died. The defendant was the dealer that supplied this heroin.

After United States v. Booker, the Sentencing Guidelines are advisory and sentences are subject to a deferential review for reasonableness. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Of course, the Court must consult the Guidelines and correctly calculate the Guideline range. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). After doing so, the Court will consider the sentencing factors set forth under § 3553(a) to determine a reasonable sentence, which may be more or less severe than the Guideline range. Talley, 431 F.3d at 788.

The statutory sentencing factors include, among others: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from other crimes by the defendant; (3) the

---

[1] The United States is providing copies of the autopsy reports under separate cover.

available sentences; (4) the guidelines range; and (5) the need to avoid unwarranted sentencing disparities in similarly situated defendants.  See 18 U.S.C. § 3553(a) (1)-(6).

Accordingly, the United States submits a sentence at the high-end of the applicable Guideline range is appropriate given the nature and circumstances of the offense and the history and characteristics of the defendant.  At the age of 30, the defendant now stands before the Court having been convicted of six drug-related felony offenses.  (see PSI at ¶¶ 28, 32, 35, 36, 37 and Doc. 27).  He has convictions ranging from driving on a suspended license to battery - 12 separate convictions in all and countless encounters with law enforcement.

He has dealt drug most of his adult life, generally stopping only when he was incarcerated.  Until his arrested on July 26, 2008, drug dealing was essentially his profession.  Moreover, there is reason to believe the defendant's drug dealing has contributed to the death of two individuals.  Specifically, two people have died while using the drugs he distributed.  Under these circumstances, a sentence at the high of the Guideline range is appropriate.  A copy of a letter from the sister of one of the victims is attached.  It is a stark reminder of the consequences of drug trafficking and drug use.

Additionally, a sentence at the high end of the Guideline range would serve to deter future drug trafficking in our community. The English Avenue community where the defendant distributed heroin has been plagued by drugs for decades. In turn, the drugs have brought other types of crimes and made life in this community difficult at best. Stiff sentences send the message that those who distribute drugs repeatedly will potentially face decades in jail, rather than just months. Other dealers must know that if they continue to deal drugs, they will face a similar fate.

## CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court impose a sentence at the high end of the applicable Guideline range.

    Respectfully submitted,

    DAVID E. NAHMIAS  
    UNITED STATES ATTORNEY

By: _____  
    /s/Kurt R. Erskine  
    Assistant United States Attorney  
    75 Spring Street  
    Atlanta, Georgia 30303  
    Tel: (404) 581-6047  
    Facsimile: (404) 581-6171  
    Georgia Bar Number 249953

## **CERTIFICATE OF COMPLIANCE AND SERVICE**

I hereby certify that the above will be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney(s) of record:

William Morrison, Esq.

This 10th day of July, 2009.

/s/ KURT R. ERSKINE<br>
ASSISTANT UNITED STATES ATTORNEY